Martin, J.
delivered the opinion of the court. The petition states that the plaintiff purchased from the defendants, a negro slave for nine hundred dollars, under the assurance they gave him, that he was a good domestic, good coachman, and good brickmaker, and possessed of the confidence of his former owner, whose executors they are—that there has been a gross fraud practised on him by the defendants—that the plaintiff, fully confiding in the assurance they gave him, signed the bill of sale, without reading it, not believing that any thing contained therein would have been inserted contrary to, or in opposition of the formal assurances given him, in relation to the qualities of the slave; in which he avers he was deceived. The petition next sets forth that the slave has made several attempts to runaway, and is by habit a drunkard and thief, and was in the said bad practices long before the sale, at least in the knowledge *572 of one of the defendants. It concludes with a prayer for the rescision of the sale.
East’n. District.
Jan. 1817.
Urquhart, one of the defendants, being interrogated by the plaintiff, answers that he gave no assurances as to the virtues, vices or talents of of the slave, that he knew nothing of him, except that he called himself a coachman.
The bill of sale was introduced as evidence of the assurances stated in the petition. The defendants therein warrant the negro sold free from redhibitory diseases only, as well as of any lien, or mortgage, but not as to any redhibitory vice, declaring that they do not know the slave. In the description of him, he is stated to be 25 years of age, a good domestic, coachman and brickmaker: bon domestique, cocker et briquetier.
Four witnesses, introduced by the plaintiff, declared that the slave was, from the moment he was taken into the family of the plaintiff, that is, immediately after the sale, a worthless, idle, drunken fellow, and knew nothing of the business of a coachman.
A witness introduced by the defendants deposed that he knew the slave, who was the deceased’s coachman and bore a good character.
*573 Another, the deceased’s overseer, deposed he knew the slave during a period of two years, while he belonged to the deceased, that he was at first employed as a brickmaker, was next the deceased’s coachman, and afterwards the driver of his other slaves—that he was a very faithful servant, and had the confidence of his master, who was very severe to his slaves; that he saw the negro drunk but once, and he never attempted to run away, that the deceased gave 1800 dollars for him and his wife.
On this, the district judge gave judgment for the plaintiff, and the defendants appealed.
The statement of facts is composed of the bill of sale, and the depositions of the above witnesses, and the defendants’ counsel has waved any objection to the want of an averment in the petition of the falsity of so much of the bill of sale, as relates to the slave being a good coachman.
He contends that they are not liable for any but physical or bodily defects, having declared that the warranty did not extend to moral ones, vices; and that the plaintiff has failed in the proof of the knowledge, in the defendants, of *574 any circumstance which they were bound to disclose.
That the allegation that the slave was sold a good domestic, good coachman and good brickmaker, is not supported by the proof offered; the bill of sale representing the slave as a coachman, not as a good coachman—that the defendants, knowing the slave, to have been the deceased’s coachman, might well describe him as a coachman—that in the phrase used, the adjective, according to the French language, governs only the substantive which it immediately precedes, and is not necessarily applicable to others in the phrase, bon domestique, cocher et briquetier—that, if it be doubtful whether the adjective is to be extended to the two last substantives, the construction must be in favorem solutionis.
That these witnesses prove that the slave was a good domestic, since he had been selected to oversee his fellow servants, had a good character, that he never attempted to run away, and was seen drunk but once in two years.
The plaintiff’s counsel contends that he has proved that the slave was deficient in the quality, which induced him to purchase, that he knew nothing of the business of a coachman;
*575 that he was not a good domestic, since four witness swear that he has been, ever since the purchase, an idle, worthless and drunken fellow.
This court is of opinion that the evidence, introduced by the defendants, repels all the allegations of fraud, made by the plaintiff, and supports the averment they made that the slave sold was a good domestic, a coachman and brickmaker; for we think, with their counsel, that the adjective bon, does not necessarily attach to any but the immediate substantive, domestique, and that if there be any doubt, the construction ought to be made so as to lessen rather than to increase the obligation. Perhaps a litteral translation, into the English language, might present a different idea: and the rule of the common law of England is in opposition to that which we are to follow. The common law says, verba fortius accipiuntur contra proferentem: the civil requires the construction to be in fuvorem solutionis.
Neither is the testimony of the defendants' witnesses much weaknened by that of those of the plaintiffs, though the latter be more numerous. These swear that the slave knew nothing of the business of a coachman, and is an idle, worthless and drunken fellow. He might con *576 ceal his skill from his dislike of a new master; a great indulgence might render him idle, and free access to liquors might induce him to drink to excess: and he consequently would appear idle, drunk and worthless. But this does not disprove what is sworn on the opposite side that previous to the sale, under a severe master, he was a faithful servant, bore a good character, and possessed the confidence of the deceased; circumstances which strongly justify the assertion of the defendants that he was a good domestic.—The depositions of the plaintiff’s witnesses do not disprove what is sworn by those of the defendants, that the slave was a coachman and brickmaker.
The plaintiff in propriâ, personâ, Moreau for the defendants.
It is therefore ordered, adjudged and decreed, that the judgment of the district court, be annulled, avoided and reversed, and that there be judgment for the defendants with costs.